# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

PARNELL R. MAY                                                                     PLAINTIFF

v.                             4:20-cv-00826-BRW-JJV

ERIC HIGGINS,
Sheriff, Pulaski County, *et al.*                                        DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Billy Roy Wilson. Any party may serve and file written objections to this recommendation. Objections should be specific and include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this recommendation. Failure to file timely objections may result in a waiver of the right to appeal questions of fact. Mail your objections to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

### DISPOSITION

**I.  INTRODUCTION**

Parnell R. May ("Plaintiff") is a pretrial detainee in the Pulaski County Regional Detention Facility ("PCRDF"). He has filed a *pro se* Amended Complaint, pursuant to 42 U.S.C. § 1983, alleging Defendants Sheriff Eric Higgins, Chief of Detention Charles Hendricks, Watch Commander Jackson Bennett, Deputy Sheriff James Hill, and Deputy Chase Davis violated his

1

constitutional rights by failing to protect him from attempting suicide on May 20, 2020.[1]  (Doc. 4.)  Specifically, Plaintiff says Defendants violated his constitutional rights by failing to adequately monitor the segregation unit where he was housed or have an operable emergency call or intercom button ("call button) in his cell.  (*Id*.)  Plaintiff brings these claims against Defendants in their individual and official capacities.  (*Id*.)

Defendants have filed a Motion for Summary Judgment arguing they are entitled to qualified immunity on the failure to protect claim raised against them in their individual capacities and judgment as a matter of law on the claim raised against them in their official capacities.  (Doc. 43, 44, 45.)  Plaintiff has filed a Response.  (Docs. 46, 47, 48.)  After careful consideration and for the following reasons, I recommend the Motion be GRANTED; Plaintiff's failure to protect claim against Defendants Higgins, Hendricks, Bennett, Hill, and Davis in their official and individual capacities be DISMISSED with prejudice; and this case be CLOSED.

## II.    SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*,

---

[1] All other claims in the Amended Complaint were dismissed without prejudice during screening mandated by 28 U.S.C. § 1915A. (Doc. 8.)

2

497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. FACTS

The facts, taken largely from Plaintiff's verified Amended Complaint[2] as well as the PCRDF's medical and institutional records, and viewed in the light most favorable to Plaintiff are as follows. On December 4, 2016, Plaintiff was arrested on a murder charge and booked into the PCRDF.[3] (Doc. 45-2.) Sometime thereafter, Plaintiff was placed on medical segregation status due to his manic depression. (Doc. 4; Doc. 45-3.) He received medication and routine mental health checks for that disorder, and he was placed in a single man cell in T-Unit. (*Id.*) Plaintiff remained in his single man cell for most of the day with an hour break for recreation and commissary privileges. (*Id.*)

The policy of the PCRDF is to conduct headcounts three times a day, and to make

---

[2] A verified complaint, signed under penalty of perjury, is the equivalent of an affidavit for summary judgment purposes. *Williams v. York*, 891 F.3d 701, 703 (8th Cir. 2018); *Hanks v. Prachar*, 457 F.3d 774, 775 (8th Cir. 2006).

[3] Plaintiff's first trial, during which he represented himself, resulted in a mistrial. On appeal, the Arkansas Court of Appeals held double jeopardy did not apply and remanded the case for a new trial, which has yet to occur. *May v. State*, 2019 Ark. App. 443, 587 S.W.3d 257 (2019), *cert. denied,* 140 S. Ct. 2533, (2020), *reh'g denied,* 140 S. Ct. 2757 (2020).

supervision rounds at least every hour and in the segregation areas such as T-Unit. (Doc. 45-1; Doc. 45-5.) At least three times a week, a nurse conducts rounds on all detainees in segregation to see if they have medical or mental health needs. (*Id.*) And, inmates in segregation may give emergency sick call requests or grievances to guards whenever they conduct headcounts or security rounds. (*Id.*) The PCRDF staff are trained to identify and respond to detainees who express suicidal thoughts or other mental health problems. (Doc. 45-5.) If any detainee expresses suicidal thoughts or is otherwise identified as a suicide risk, the detainee is immediately put on suicide watch, moved to a "suicide proof" cell, monitored every fifteen minutes, and referred to a psychiatrist or mental health professional for evaluation "at the soonest possible time." (*Id*. at 38-40.)

On March 24, 2020, Plaintiff received a mental health evaluation. (Doc. 45-3.) Plaintiff indicated he was doing well, denied having any suicidal thought, said he understood how to communicate to staff if he had suicidal thoughts in the future, and continued his medication. (*Id.*) It is undisputed that during the next several months, Plaintiff did not report any suicidal thoughts or any concerns during headcounts or security checks. (*Id.*) And, he did not file any sick call requests or grievances seeking assistance. (*Id*.) In the Amended Complaint, Plaintiff alleges the intercom or emergency call button ("call button") in his cell, and all cells in T-Unit, did not work and had not done so for several months. (Doc. 4 at 4, 5, 7, 10). But, it appears from the record that Plaintiff did not file any grievances or sick call requests about the matter.[4]

On May 9, 2020, Defendant Sheriff Higgins enacted several Covid-19 policies including a requirement that all detainees must have their temperature checked before coming out of their

---

[4] Defendants have not admitted, denied, or otherwise addressed this material allegation. (Doc. 45.)

4

segregation cells for recreation and commissary time. (Doc. 4.) Because Plaintiff refused to allow his temperature to be taken, he was not allowed out of his segregation cell for several days.[5] (*Id*.) Plaintiff claims his voluntary isolation exacerbated his manic depression and caused him to become suicidal. (*Id*.) However, it is undisputed Plaintiff did not report suicidal thoughts to or seek treatment from mental health professionals or security staff during their routine rounds. (Doc. 45-1.) Similarly, it is undisputed Plaintiff did not file any grievances or sick call requests seeking mental health treatment.[6]

On May 19, 2020, at 11:26 p.m., Plaintiff did not report any problems or concerns when a nurse conducted health care rounds in T-Unit. (Doc. 45-3). Similarly, Plaintiff did not report any problems when Defendants Hill, Davis, and other PCRDF deputies conducted rounds in T-Unit, with the last one occurring at approximately 8:30 p.m. (Doc. 45-4 at 37.) According to PCRDF records, security rounds resumed around 1:00 a.m. on May 20, 2020, and continued thereafter by Defendant Davis and other guards approximately every hour with no abnormalities noted. (*Id*.) Plaintiff says that around 1:00 or 2:00 a.m., he began to have suicidal thoughts. (Doc. 4; Doc. 47 at 2.) But, he was unable to get assistance because the call button was broken, and jailers at the deputy station in the front of T-Unit could not hear him yelling from his cell, which was at the back of the unit. (Doc. 4 at 13; Doc. 46; Doc. 47.) Plaintiff claims he tried to kill himself by tying a bed sheet around his neck and the bar windows. (*Id*.) But, as Plaintiff passed out, the sheet allegedly tore, he was able to regain his breath, and nearby detainees

---

[5] Throughout his summary judgment papers, Plaintiff continues to challenge the constitutionality of the temperature check policy and the decision to confine him in his cell until he agreed to have his temperature taken. However, those claims have already been dismissed from lawsuit. (Doc. 8.)

[6] On May 11, 2020, Plaintiff filed a Sick Call Request challenging the temperature check policy, but he did not mention a broken call button or request additional mental health care. (Doc. 45-3.)

5

persuaded him not to try it again. (*Id.*) Importantly, the parties *agree* Plaintiff *never* reported his suicidal attempt to any of the Defendants, medical staff, or guards. Nor, did he file any grievances or sick call requests about the matter.[7] Plaintiff says he did not do so because he did not want to be put on suicide watch where he would be transferred to a cell without bedding and clothed in a paper gown, to prevent him from harming himself. (Doc. 46; Doc. 47.) Sometime before Plaintiff filed the Amended Complaint, on August 5, 2020, the PCRDF discontinued the mandatory temperature check policy and allowed Plaintiff to leave his cell without having his temperature taken for commissary and exercise breaks.

## IV. DISCUSSION

### A. Individual Capacity Claims

Plaintiff says Defendants violated their constitutional duty to protect him from harm by inadequately monitoring his segregation unit and not having an operable call button in his cell. Defendants argue they are entitled to qualified immunity on this failure to protect claim raised against them in their individual capacities. Qualified immunity protects government officials who acted in an objectively reasonable manner and shields them from liability when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not fact. *McClendon v. Story Cty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from

---

[7] Defendants challenge Plaintiff's allegation that he tried to kill himself because there are no grievances, sick call requests, medical records, or any other evidence supporting his allegation. (Doc. 44 at 13.) But, at the summary judgment stage, I must accept the truth of Plaintiff's testimony, in his verified Amended Complaint, that he secretly tried to do so on May 20, 2020.

suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

Defendants are entitled to qualified immunity if: (1) the evidence, viewed in the light most favorable to Plaintiff, does not establish a violation of his constitutional right to be protected from harm; or (2) the constitutional right was not clearly established at the time of the alleged violation, such that reasonable officials would not have known their actions were unlawful. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Cullor v. Baldwin*, 830 F.3d 830, 836 (8th Cir. 2016). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 232; *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009). Defendants argue they are entitled to qualified immunity based on the first prong of the analysis.

Because Plaintiff was a pretrial detainee, his failure to protect claim falls under the Fourteenth Amendment. *Perry v. Adams*, 993 F.3d 584, 587 (8th Cir. 2021). The Eighth Circuit has applied the deliberate indifference standard under the Eighth Amendment to failure to protect claims brought by pretrial detainees. *Id.*(applying the Eighth Amendment deliberate indifference standard to a failure to protect claim brought the family of a pretrial detainee who committed suicide); *Hott v. Hennepin Cnty.,* 260 F.3d 901, 906-908 (8th Cir. 2001) (same). Thus, to defeat qualified immunity and proceed to trial on his failure to protect claim, there must be evidence that: (1) objectively, there was a substantial risk harm to Plaintiff; and (2) subjectively, each of the Defendants knew of and deliberately disregarded that substantial risk of serious harm.[8] *See Id*;

---

[8] Because there is no vicarious liability in § 1983 actions, Plaintiff must have proof that *each* Defendant "through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997) (holding that the "general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support [§ 1983] liability").

*Blair v. Bowersox,* 929 F.3d 981, 987 (8th Cir. 2019). As to the second element, deliberate indifference is a high standard that requires more than negligence or even gross negligence. *Doe v. Flaherty*, 623 F.3d 577, 584 (8th Cir. 2010). It requires "proof of a reckless disregard of the known risk." *Scott v. Baldwin*, 720 F.3d 1034, 1036 (8th Cir. 2013).

Plaintiff says Defendants created a substantial risk of harm by failing to perform routine checks on him and other detainees in segregation in T-Unit. (Doc. 4 at 5, 7, 17; Doc. 47.) However, Defendants' medical records and security logs demonstrate medical staff routinely evaluated Plaintiff's mental health approximately three times a week, and that security rounds were conducted approximately every hour. (Docs. 45-3, 45-4.) Plaintiff has not presented any contrary evidence.

Plaintiff also says Defendants created a substantial risk of harm by not having an operable call button in his segregation cell, which was allegedly in the back of the T-Unit where his yells for help could not be heard by jailers at the deputy station. Prisoners and detainees do not have a *per se* constitutional right to have a call button in their cells. *See Lowry v. Sutterfield*, No. 3:20-CV-03037, 2020 WL 2950358, *2 (W.D. Ark. June 3, 2020) (unpublished opinion collecting cases); *Smith v. Holder*, No. 1:17-CV-00117 SRC, 2020 WL 40237, *10 (E.D. Mo. Jan. 2, 2020) (same). Instead, it depends on the facts of the particular case. *Id.* Here, it is undisputed Plaintiff never reported suicidal thoughts to mental health providers, jailers, or importantly, to *any* of the Defendants in this case. It is also undisputed PCRDF's policy requires detainees in segregation in the T-Unit to have mental health checks three times a week, head counts three times a day, and security rounds at least every hour. And, the security logs verify this policy was regularly carried out. Plaintiff alleges, without any supporting evidence, that Defendants Hill and Davis did not properly perform security checks on May 19 and 20, 2020. Even assuming the truth of that

8

assertion, which is clearly contrary to the PCRDF's logs, Defendants' alleged negligent failure to do so, without any personal knowledge that Plaintiff was feeling suicidal or needing additional mental health assistance, does not rise to the level of deliberate indifference. *See Hott,* 260 F.3d at 906-908 (a jailer was not deliberately indifferent when he failed to regularly conduct security checks, as required by jail policy, on a pretrial detainee who committed suicide because the jailer did not know the detainee was a suicide risk.) And, most importantly, Plaintiff admits he did not report suicidal thoughts because he did not want to be moved to suicide watch where the conditions were unpleasant. Thus, it is unclear how having a functioning call button in Plaintiff's cell would have changed anything. Given the frequency of mental health checks and security rounds on an inmate who had not expressed any recent suicidal thoughts, I conclude there is insufficient evidence of a substantial risk of harm created by failing to have a functioning call button in Plaintiff's cell.

And, as to the second requirement of deliberate indifference element, although Plaintiff claims the call button in his cell was broken, there is no evidence any of the Defendants had actual knowledge of the matter. For instance, it is undisputed Plaintiff did not file any grievances complaining about a broken button. In his Amended Complaint, Plaintiff says he sent "letters" to Defendant Higgins. (Doc. 4 at 11, 28.) But, he does not say when he sent the letters or what they were about. And the only letter in the record is a May 22, 2020 letter Plaintiff sent to Defendant Higgins about the temperature check policy. (Doc. 45-3.) Not only was this letter sent *after* Plaintiff's alleged suicide attempt, it did not mention anything about a broken call button, suicidal thoughts, or a need for further mental health care. To constitute deliberate indifference, the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Vandevender v. Sass*, 970 F.3d

972, 975 (8th Cir. 2020); *Schoelch v. Mitchell*, 625 F.3d 1041, 1046 (8th Cir. 2010). Nothing in the record suggests Defendants Higgins, Hendricks, Bennett, Hill, or Davis acted with deliberate indifference. Thus, I conclude they are entitled to qualified immunity on the failure to protect claims raised against them in their official capacities. *See Perry,* 993 F.3d at 587-88 (granting qualified immunity when there was no evidence jail officials knew a pretrial detainee was suicidal and mental health professionals had determined he was not a suicide risk).

### B. Official Capacity Claims

Plaintiff also has sued Defendants in their official capacities, which "must be treated as a suit against the County." *Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018). Unlike the individual defendants, counties and municipalities cannot raise the qualified immunity defense. *Thurmond v. Andrews*, 972 F.3d 1007, 1013 (8th Cir. 2020); *Mogard v. City of Milbank,* 932 F.3d 1184, 1192 (8th Cir. 2019). However, Pulaski County may seek judgment, as a matter of law, under Fed. R. Civ. P. 56.

Because there is no vicarious liability in § 1983 actions, Pulaski County can only be held liable if the *constitutional violation resulted from*: "(1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir. 2019); *Corwin v. City of Independence, Mo.,* 829 F.3d 695, 699 (8th Cir. 2016). But, for the reasons previously explained, I conclude there is insufficient evidence of a constitutional violation here. Thus, Pulaski County's policies, customs, and training practices are irrelevant, and it is entitled to judgment as a matter of law. *Ivey v. Audrain Cty., Mo.,* 968 F.3d 845, 851 (8th Cir. 2020) (if the individual officers are entitled to qualified immunity under the first prong of the analysis, *i.e.,* no evidence of a constitutional violation, then the county cannot be held liable); *Schoelch v. Mitchell*, 625 F.3d 1041, 1048 (8th Cir. 2010) (holding that there was

no need to consider a pretrial detainee's failure to protect claim against the city when there was no evidence that any of the individual officers committed a constitutional violation).

## V. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. 43) be GRANTED; Plaintiff's failure to protect claim against Defendants Higgins, Hendricks, Bennett, Hill, and Davis in both their individual and official capacities be DISMISSED with prejudice; and this case be CLOSED.

2. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order and Judgment adopting these recommendations would not be taken in good faith.

DATED this 24th day of May 2021.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE